The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | July 14, 2023 |
| To: | JASON NIEFERT<br>NEIFERT, BYRNE & OZGA, P.C.<br>1441 29TH STREET STE 111<br>WEST DES MIONES IA 50266 |
| Attn: | |
| Fax: | (515) 226-2497 |
| From: | Sarah Boyle<br>Claims Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages (Including Cover): | 9 |
| RE: | Claim #: 12118946<br>Claimant: Jo Nie<br><br>Mercy Medical Center |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

July 14, 2023

Jason Niefert
Neifert, Byrne & Ozga, P.C.
1441 29TH STREET STE 111
WEST DES MIONES, IA 50266

RE: Long Term Disability (LTD) Benefits
Mercy Medical Center
Claim #: 12118946
Claimant: Jo Nie

Dear Jason Niefert:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond September 27, 2022.

**Initial Claim Decision**

Ms. Nie submitted a claim for her absence from work as of September 28, 2021, as a result of symptoms from Meniere's disease. LTD benefits were approved through September 27, 2022. Benefits beyond September 27, 2022 were denied as the evaluation concluded she was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated October 8, 2022. Ms. Nie was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt her claim should not have been denied, and submit additional information to support her claim. Specifically, she was advised to submit the following information:

*Any and all medical records, treatment notes, test results, operative reports, therapy records, admit/discharge summaries from May 13, 2022 through the date of your full appeal from any and all physicians.*

*You should also provide any additional information that you feel will support your claim.*

**Appeal**

In your letter of appeal dated June 6, 2023, you indicated Ms. Nie could not work due to Meniere's Disease which caused constant ringing in her right ear, severe fatigue, balance difficulties, and vertigo. You stated our reliance on Dr. Lefkowitz' report was misplaced in part because it stated we were missing many medical records, including vestibular therapy notes beyond November 23, 2020,

ENT notes beyond December 9, 2020, and treatment notes from Dr. Gisselman beyond December 9, 2021.

In support of Ms. Nie's claim, you submitted the following information:

- Medical opinion letter signed by Dr. Gisselman on May 31, 2023
- May 1, 2023 treatment note from Dr. Gisselman

On June 12, 2023, we contacted you at (515) 226-2117 and left a message asking if you intended to submit the missing medical records you identified in your appeal letter. We offered to toll the appeal review to allow you time to submit this information. We requested a response by June 13, 2023, and stated that if we did not hear from you, we would assume the appeal was complete and would proceed with the review. We also contacted you via email to jneifert@nbolawfirm.com and ashipman@nbolawfirm.com asking if you would like us to toll the appeal to allow you time to submit the missing medical information identified in your appeal letter. We requested a response by June 13, 2023, and stated that if we did not hear from you, we would assume the appeal was complete and would proceed with the review. Since no response was received by June 13, 2023, we referred Ms. Nie's claim for a review.

**Appeal Evaluation**

During the review of your appeal, Ms. Nie's claim was reviewed by Dr. David Foyt, an independent physician who is board certified in Otolaryngology, and in Otolaryngology, Neurotology. Based on his review of the medical records, Dr. Foyt concluded Ms. Nie should be restricted from entering a situation where she is a fall risk to herself or others. This includes climbing any ladders or any obstacle greater than 3 feet in height. She is restricted from walking up and down stairs without a handrail. Otherwise, she has no other restrictions or limitations.

On June 20, 2023, Dr. Foyt spoke with Dr. Gisselman who indicated she felt Ms. Nie was completely disabled due to a variety of reasons, including psychiatric issues as well as otologic issues. She felt Ms. Nie was disabled due to dizziness and disequilibrium.

On June 21, 2023, Dr. Foyt spoke with Dr. Gailushas who stated he had not seen Ms. Nie since 2020 and had referred her to ENT and then to Neurotology. He stated that when he saw her in 2020, she had not had any vertigo episodes since 2019. He felt that her story was very unusual for Ménière's disease. He indicated that she had dizziness when bending over. They discussed appropriate limitations and Dr. Gailushas agreed that she should be limited to not climbing stairs or being in a situation where she is a fall risk to herself or others. He did not feel that full limitations of not working on a computer were warranted. Therefore, there are no other restrictions other than the height limitations. On June 22, 2023, Dr. Foyt sent a letter to Dr. Gailushas summarizing their conversation and requsting that if any of the summarized conversation was misinterpreted or if anything was taken out of context, please make the necessary changes or comments directly to the document, and fax back within five days. As of the date of this letter, we have not received a response from Dr. Gailushas to disagree with the summary.

On June 23, 2023, copies of the updated medical reviews were sent to you, and you were provided with the opportunity to review and comment. Your response was due by July 13, 2023.

On July 12, 2023, we received an email from you indicating you were submitting a letter from Dr. Gailushas. We received a letter dated July 12, 2023 from Dr. Gailushas stating Ms. Nie continues to have significant impact with balance and vertigo secondary to her Meniere's disease. He stated that since 2022, she has had worsening balance and vertiginous events resulting in difficulty with daily living, and the inability to do even sedentary jobs due to the episodic and unpredictable nature of her Meniere's attacks. There were no medical records submitted with this letter.

No medical information has been submitted from any mental health provider to support mental health restrictions and limitations.

Ms. Nie's claim was previously reviewed by a vocational consultant, who completed an occupational analysis in order to identify the material and substantial duties of her occupation as a Clinical Documentation Specialist as it is normally performed in the national economy. The analysis showed Ms. Nie's occupation is most often performed at both a Sedentary and Light physical demand level with opportunities at both levels.

"**S-Sedentary Work -** Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

Positional requirements at the sedentary level include:

- **Constant** sitting
- **Frequent** handling and fingering
- **Occasional** standing and walking
- **No** bending/stooping, twisting, kneeling, crouching/squatting, crawling, balancing, climbing, or reaching (reaching can be reduced or eliminated by moving objects within an ergonomically correct distance from the body)

The Department of Labor defines light work as,

"**L-Light Work -** Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."

Positional requirements at the light level include:

- **Frequent** *sitting, *standing, *walking, handling, and fingering
- **Occasional** reaching, bending/stooping, and twisting
- **Never and Occasional** kneeling, and crouching/squatting

- **No** balancing, climbing, or crawling

*Within the light environment, the level of sitting, standing, and walking will vary depending on the environment the Nurse is working in as well as the tasks they are performing; they may be required to meet with various companies for sales purposes, visit different medical sites to complete presentations or trainings, or work as a Nurse Educator or Consultant in diverse medical care settings.

We are aware and fully considered the Social Security Administration's (SSA) ruling to approve Ms. Nie's Social Security Disability Income benefit beginning March 2022 relative to her disability under their rules beginning September 27, 2021. However, an award of Social Security Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Mercy Medical Center Group Disability Income Policy. A copy of Ms. Nie's Social Security Disability file was not submitted for our consideration. Nevertheless, our determination is based upon updated medical records and different medical and vocational information that may not have been considered by the SSA.

**Conclusion**

We conducted a thorough and independent review of Ms. Nie's entire claim. In summary, we acknowledge that she may have continued to experience some symptoms associated with her condition beyond September 27, 2022. However, the information does not contain sufficient exam findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation after that date.

Having carefully considered all of the information submitted in support of Ms. Nie's claim, our position remains that sufficient proof of her continued disability in accordance with the Policy provisions after September 27, 2022 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, Ms. Nie must satisfy the requirements of all Policy provisions that state, in part:

*Applicable to Class 2:*
*24 Month Own Occupation*

*"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*
*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
*Applicable to Class 2:*
*b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "**Disability**" or "**Disabled**" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Material and Substantial Duties"**, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

***"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Lincoln will use the replacement chosen or published by the American Psychiatric Association.*

***"Own Occupation"**, with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.*

***"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*
*Proof must be submitted in a form or format satisfactory to Lincoln.*

***Disability Benefit***
*When Lincoln receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Lincoln will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Lincoln Proof of continued:*
*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*
*The Proof must be given upon Lincoln's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Lincoln will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

***Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms Limitation***
*The benefit for Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*

*If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at*

*the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.*

*In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

***Discontinuation of the Long Term Disability Benefit***
*The Monthly Benefit will cease on the earliest of:*
*…*
*9. the date the Covered Person is no longer Disabled according to this policy;*
*…*

***Legal Proceedings***
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than one year after the time Proof of claim is required.*

***Notice and Proof of Claim***
*1.* ***Notice***
*a. Notice of claim must be given to Lincoln within 30 days of the date of the loss on which the claim is based. If that is not possible, Lincoln must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Lincoln.*
*b. When written notice of claim is applicable and has been received by Lincoln, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Lincoln written Proof of claim without waiting for the forms.*
*2.* ***Proof***
*a. Satisfactory Proof of loss must be given to Lincoln no later than 30 days after the end of the Elimination Period.*
*b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.*
*c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Lincoln within 30 days of the request for such Proof.*
*Lincoln reserves the right to determine if the Covered Person's Proof of loss is satisfactory.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Nie was entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information she wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that

the denial of benefits will be maintained.

At this time, Ms. Nie’s administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and her claim will remain closed. She may request to receive, free of charge, copies of all documents relevant to her claim. She has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If Ms. Nie’s plan is subject to ERISA, she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of Ms. Nie’s claim have been completed, she has the right to bring a civil action under applicable law. Ms. Nie’s employer's plan has a contractual limitations period of one year, which means that a lawsuit must be brought within one year after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is July 14, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Mercy Medical Center Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata’ hane’go shíká a’doowol ninizingo saad hosiniłį́į’ dóó ná’ookąąh níní’ą́ągo naaltsoos nííníltsoozígíí hazho’ó bik’idi’deeshtį́įł ninizingo doo bą́ąh ílinígóó níká a’doowol éí biniiyé shił hodíílnih ákó ákwe’égi níká adeeshwol.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Sarah Boyle
Claims Resolution Specialist
Phone No.: (888) 437-7611 Ext. 16117
Secure Fax No.: (603) 334-0401